IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN WIEBE, ET AL.                    *
                Plaintiff
                               *

      vs.                              *          Civil Action No.   RDB-11-3245

                               *

NATIONAL SECURITY AGENCY, ET AL.
                Defendant           *

                           ******

## REPORT AND RECOMMENDATION

This matter has been referred to me for report and recommendation.  [ECF No. 8].  Five individual petitioners have filed motions under Fed. R. Crim. Proc. 41(g), seeking return of certain property seized by government agents.   The five cases have been consolidated for disposition in this Court.  [ECF Nos. 12, 16, 18].  The Complaint brought by one of those five Petitioners, Diane Roark, has been dismissed for improper venue.  [ECF No. 59].  Respondents National Security Agency and Federal Bureau of Investigation (collectively, "the Government") have filed a Motion to Dismiss or, in the alternative, for Summary Judgment. [ECF No. 46].  Two of the remaining four Petitioners, William E. Binney and John K. Wiebe, have filed counter-Motions for Summary Judgment [ECF Nos. 49, 53].   I have reviewed the motions and the oppositions and replies thereto.  I also held a hearing on the motions on August 23, 2012.  For the reasons set forth below, I recommend that the Government's Motion for Summary Judgment be granted in part and denied in part, and that Petitioners' Motions for Summary Judgment be denied.

## I.    Background

During the course of a criminal investigation, on July 26, 2007, the Government searched the residences of Petitioners Wiebe and Binney pursuant to search warrants.  On that same date,

Government agents searched the residence of Petitioner Edward Loomis after obtaining Mr. Loomis's consent.   On November 28, 2007, Government agents searched the residence of Petitioner Thomas Drake pursuant to a search warrant.   During each search, agents seized evidence including documents, computer accessories such as disks or CD Roms ("disks"), and computer hard drives ("HDDs").   Petitioners Wiebe, Binney, and Loomis were never charged with criminal conduct.   The Government obtained an indictment against Petitioner Drake. *United States v. Drake*, RDB-10-0181 [ECF No. 1].   Eventually, Mr. Drake pled guilty to a misdemeanor offense of exceeding authorized use of a computer, and all remaining charges were dismissed. *Id.* [ECF No. 169]

Although some of the seized items have been returned to the Petitioners, the Government has refused to return other seized evidence.[1]   The information contained in the disputed items falls into one of four categories: classified information, information protected by the National Security Agency Act of 1959 ("NSAA information"), government information controlled by other government agencies ("OGA information"), and unprotected information.[2]   Through this action, Petitioners seek return of each disputed item in its entirety.

The Government has used the following process to evaluate each disputed item.   A Special Agent, Tony T., reviewed the data contained in each item.   Tony T. identified potentially classified and protected information.   Decl. of Tony T. ¶¶ 7-10.   Tony T. then forwarded a subset of material he believed to be classified or protected to Steven T., an "original TOP

---

[1] The Government has not returned two HDDs from Petitioner Wiebe, one HDD, three disks and 84 pages of paper documents from Petitioner Binney, one HDD from Petitioner Loomis, and seven HDDs, three disks, and 4526 pages of paper documents from Petitioner Drake.  Collectively, those items will be called "the disputed items."  Other items have been returned to Petitioners, and Petitioners have abandoned their claims to certain items.

[2] Unprotected information refers to any information that is non-classified, non-NSAA, or non-OGA information. For example, unprotected information includes Petitioners' personal data and family photographs.

SECRET classification authority."  Decl. of Steven T. ¶ 1.   As an original TOP SECRET classification authority, Steven T. is responsible for confirming the classification of information. Decl. of Steven T. ¶ 7.   Steven T. determined that each of the disputed items contains some classified information, NSAA information, or OGA information.   Decl. of Steven T. ¶¶ 8-12. According to Steven T.'s Affidavit, that material is protected from release.  Decl. of Steven T. ¶¶ 10 n.5, 13-14.

## II.    Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (Gregory, J., concurring) (citation omitted).   A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement."   *Twombly*, 550 U.S. at 556.   When considering a motion to dismiss under Rule 12(b)(6), this Court accepts as true the facts alleged in Plaintiff's Complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

4

Fed. R. Crim. Proc. 41(g) governs motions for the return of property where an individual is "aggrieved by an unlawful search and seizure or by the deprivation of property."[3]   A Rule 41(g) motion for return of property is typically granted if the related prosecution has ended, but should be denied if the government establishes a "continuing interest" in the property.  *See United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990).

## III.    Arguments

### A.  Petitioners Have Standing To Sue.

Initially, the Government contends that Petitioners lack standing to pursue their claims because they have no possessory interest in government property.  That argument is unavailing. Rule 41(g) petitioners have standing if they are able to show a "sufficient interest" in the seized items.  *Matthews v. United States*, 917 F. Supp. 1090, 1104 (E.D. Va. 1996).   This is a "comparatively low" threshold, merely requiring the movants to allege ownership and to provide some evidence of ownership.  *Id.*; *see also United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994) (stating that although a party need not have an "ownership" interest in seized property to have standing, mere unexplained possession of property is insufficient).

  Here, Petitioners have alleged ownership and have provided evidence of ownership of the disputed items.  The disputed items are not, as the Government suggests, entirely government property.  Although some government property may be contained within the disks, HDDs, and documents, many of the disputed items also contain Petitioners' professional and personal

---

[3] Fed. R. Crim. P. 41(g) states:

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

information.   Petitioners' obvious ownership interest in their personal information is not eviscerated by the simultaneous presence of government information on the disputed items. Because Petitioners have established a sufficient ownership interest in information contained in the disputed items, and because they no longer have possession of those items, the Petitioners have established a sufficient deprivation of property to trigger Rule 41(g).   As such, the complex issues presented should not be rejected via a threshold standing analysis.

### B.  The Government's Assertions of Classification and Statutory Protection Are Not Subject to Judicial Review.

The next issue is whether any classified, NSAA, or OGA information exists on the disputed items.   The Government has asserted that each disputed item contains classified information, NSAA information that is protected under the National Security Agency Act of 1959, 50 U.S.C. § 402; 18 U.S.C. § 798; and Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 30 § U.S.C. 403-1(i)(1), or OGA information.   Decl. of Steven T. ¶¶ 8-10.   Petitioners suggest that the Government's determinations are subject to judicial review.   The Government contends that it alone determines whether information is classified, NSAA protected, or OGA.   A review of governing law establishes that the Government's position is correct as to classified information and NSAA information.   However, judicial review of the alleged OGA information is not precluded on the current record before the Court.

Although Petitioners assert that the Government has an established record for improperly classifying or over-classifying information, the Government's classification determinations are not subject to challenge in court.   *See United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984) (stating that the government may determine what is classified, and noting that neither the

courts nor any defendant may challenge or question such a classification).  In *United States v. Marchetti*, the Fourth Circuit held that a former Central Intelligence Agency ("CIA") employee could not disclose classified information unless that information was already in the public domain.  466 F.2d 1309, 1317 (4th Cir. 1972).  Importantly, the court also held that if the CIA denied the employee the ability to publish certain material, the only classification issues that courts could review were whether the government had identified the information as classified, and if so, whether the information had previously entered the public domain.  *Id.* at 1318.  In other words, the court could not review the propriety of the government's classification of information.  *See id.*  The court reasoned that Article II § 2 confers broad powers upon the Executive in controlling relations with foreign states and conducting national defense, and that the CIA is an executive agency whose activities are closely related to these functions.  *Id.* at 1317.  As such, the court held that the CIA's classification system is "part of the executive function beyond the scope of judicial review."  *Id.* at 1317; *see also United States v. Collins*, 720 F.2d 1195, 1198 n.2 (11th Cir. 1983) (noting that it is the Executive's responsibility to classify information, not the judiciary's).

The rationale precluding judicial review of classification decisions is equally applicable to NSAA information.  The National Security Agency ("NSA") is also an executive agency whose functions "closely relate" to conducting national defense.  *See* Decl. of Steven T. ¶¶ 3-6.  As such, designation of material as statutorily protected by the NSAA is as much a part of the executive function as classification.  By analogy, then, judicial review of the Government's designation of material as NSAA information would be improper.  *C.f. Marchetti*, 466 F.2d at 1317; *Smith*, 750 F.2d at 1217.  In addition, this Court has previously held that the NSA holds a statutory privilege protecting against the disclosure of NSAA information relating to its

activities.  *United States v. Drake*, Criminal No. RDB 10-181, 2011 WL 2175007, at *5 (D. Md. June 2, 2011).[4]  Where the Government has identified information contained within the disputed items as classified or NSAA information, the law prevents this Court from assessing the propriety of those decisions.

The third category as to which the Government has asserted protection is OGA information.  According to the Government, an OGA designation is placed on information that originated with another federal Agency or Department.  *See* Decl. of Steven T. ¶ 10 n.5.  The Government has established that the OGA information at issue has not been released to the general public.  Decl. of Steven T. ¶ 10 n.5.  However, the Government has not identified the federal Agency or Department in question, and has not even provided any general information about its duties.  The record does not establish whether the information derived from the Department of Defense, the Department of Agriculture, or the General Services Administration.  As such, the Government has neither established any connection between the OGA information and important interests of national security, nor has it provided any indication that the OGA information is classified by the other agency or protected by any statute.  On the current record, then, any designation of material as OGA information is subject to judicial review and challenge in court.

## C. The Government Has Established a Continuing Interest in Classified, NSAA, and OGA Information.

Petitioners seek the return of all of the seized items, including the classified, NSAA, and OGA information.  The Government's position is that it retains a continuing interest in such

---

[4] The February 9, 2012 letter to Petitioner Wiebe and Counsel from Judge Richard D. Bennett [ECF No. 7], cited by Petitioners, simply noted that the parties dispute the classification of this information, and appointed this Court to address this matter.  This statement did not indicate a position on the Court's jurisdiction to review the government's classification decisions.

information and that the information therefore need not be returned.  Further, the Government asserts that Petitioners are not entitled to lawful possession of classified information.  The Government is correct.

Pursuant to Rule 41(g), courts must determine if the government's retention of seized property is "reasonable," and must balance the government's need to retain the property against the individual's right to use the property.  *In re Grand Jury Subpoena Duces Tecum Issued to: Roe & Roe, Inc.*, 49 F. Supp. 2d 451, 452-53 (D. Md. 1999).  Generally, seized property other than contraband "should be returned to the rightful owner after the criminal proceedings have terminated."  *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990).  This right of return, however, is subject to "*any* continuing interest the government has in the property."  *Id.* (emphasis added).  What constitutes a government interest "may take different forms as long as it is a legitimate interest." *Id.*; *see Roe & Roe, Inc.*, 49 F. Supp. 2d at 453 (noting that the Government must provide a "legitimate reason" to maintain possession of the property); *Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th Cir. 1982) (use in investigation); *United States v. Francis*, 646 F.2d 251, 263 (6th Cir. 1981) (right to levy); *United States v. Sabatino*, Nos. 07-2460-cr(L), 08-0628-cr(CON), 2009 WL 248009, at *1 (2d Cir. Feb. 3, 2009) (holding that the government had a continuing interest in photographs of petitioner's co-conspirators because their return to petitioner would pose a legitimate safety threat to others).

Here, the Government has established a sufficient continuing interest in the classified information.  Classified information has been defined as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." *Smith*, 750 F.2d at 1217 (citing the Classified Information Procedures Act, 18 U.S.C. app. 3); *see*

Exec. Order No. 13526, Part 6, Sec. 6.1(i), 75 Fed. Reg. 707 (Dec. 29, 2009) ("classified information" is defined as "information that has been determined . . . to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form."). Pursuant to 50 U.S.C. § 435(a), the President "shall establish procedures to govern access to classified information." Congress also required that the President's established procedures must, at a minimum, provide that no executive branch employee may receive access to classified information unless the government has performed a background investigation and has determined that such access is "clearly consistent" with its national security interests. 50 U.S.C. 435(a)(1).

The President, pursuant to this authority, mandated that a person may only receive access to classified information if an agency has determined that the person is eligible, the person has signed a non-disclosure agreement, and the person needs to know the information. Exec. Order No. 13526, Part 1, Sec. 4.1(a), 75 Fed. Reg. 707 (Dec. 29, 2009). Here, it is undisputed that Petitioners do not hold security clearances, and that no agency has determined that Petitioners may have access to classified material. As such, the Government has established a continuing interest in maintaining the classified information and in not sharing the classified information with Petitioners. Moreover, the Petitioners may not lawfully obtain the classified information they seek.[5]

The Government has also established a sufficient continuing interest in the unclassified NSAA information. The National Security Agency Act of 1959, Section 6(a), states that

---

[5] Each of the Petitioners' HDDs, other than Petitioner Drake's HDD, labeled Item 11, has been found to contain classified information. Decl. of Steven T. ¶ 9. The HDDs themselves are now considered classified because they contain classified information. Decl. of Steven T. ¶ 9. However, as addressed below, the unprotected information contained on those HDDs could be returned to Petitioners by copying the information onto an unclassified device.

"nothing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such an agency."

In *Drake*, the Court held that the NSAA created a statutory privilege protecting the NSA against the disclosure of unclassified information "relating to" its activities. *Drake*, 2011 WL 2175007, at *5. Here, the Government has shown that some of the information sought is protected by the NSAA. *See* Decl. of Steven T., ¶¶ 8, 10, 11, 12. Accordingly, the Government has established a continuing interest in the NSAA information, and the Court cannot require the Government to disclose the NSAA information sought by the Petitioners.[6] *See* National Security Agency Act of 1959, Section 6(a); *Drake*, 2011 WL 2175007, at *5.

Last, although the Government's OGA designation is not dispositive, Petitioners are not entitled to the return of OGA information. As noted above, a Petitioner's right to receive its property after a criminal investigation is terminated is subject to "*any* continuing interest the government has in the property." *Duncan*, 918 F.2d at 654 (emphasis added). The Government asserts a sufficient and legitimate interest in OGA information as government property that has not been released to the public. Mot. at 20. Information generated by the government is "clearly [the government's] property." *United States v. Berlin*, 707 F. Supp. 832, 839 (E.D. Va. 1987). Because the alleged OGA information "clearly originated from another federal Agency or Department," Decl. of Steven T. ¶ 10 n.5, the Government has proven that the alleged OGA information is government information, meaning that it is also government property. *See Berlin*, 707 F. Supp. at 839. In addition, the Government has not released the alleged OGA information to the general public, Decl. of Steven T. ¶ 10 n.5, adding to the Government's interest in

---

[6] Petitioner Drake's HDD, labeled Item 11, is now considered protected under the NSAA because it contains NSAA information. Decl. of Steven T. ¶¶ 8-9.

maintaining sole possession of this information. Certainly, the Government's interest might even be stronger if it demonstrates that this material has not been released because it is important to national security. However, as noted above, the Government must merely prove that it has "any" legitimate interest in the property to maintain possession. *Duncan*, 918 F.2d at 654. The Government's interest in its own property that has not been released to the public is sufficient for purposes of Rule 41(g). As such, if the Government establishes that its alleged designation of OGA information is proper, Petitioners should not be entitled to its return.

### D. Summary Judgment is Inappropriate as to the Unprotected Information.

Petitioners have sought the return of each disputed item in its entirety, including the unprotected information contained therein. The Government's theory is that the classified, NSAA, and OGA information constitutes "contraband," and that the HDDs, disks, and documents containing the classified material constitute "derivative contraband." The Government takes the position that it does not have to return "derivative contraband" to the Petitioners. However, a genuine issue of material fact exists as to whether any of the disputed information is "contraband" or "derivative contraband." As a result, all parties' motions for summary judgment should be denied.

Contraband is defined as an "object the possession of which, without more, constitutes a crime." *United States v. Mettetal*, No. Civ.A. 396CR30034-00, 2006 WL 1195777, at *2 (W.D. Va. May 3, 2006) (quoting *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699 (1965)). Derivative contraband is property that may be possessed lawfully, but is used in an unlawful manner or for an unlawful purpose. *See One 1958 Plymouth Sedan*, 380 U.S. at 699; *United States v. Felici*, 208 F.3d 667, 670 (8th Cir. 2000).

12

Citing only *United States v. Moussaoui*, No. CR. 01-455-A, 2002 WL 32001771, at *4 (E.D. Va. Sept. 26, 2002), the Government argues that "[c]lassified material in the possession of someone not cleared to have it is considered 'contraband.'" Mot. at 15.  That citation provides no precedential support for the assertion, because it refers not to a determination made by a court, but to a letter written by counsel for the Government in the *Moussaoui* case.  *See id.*  The mere fact that the Government's letter was unsealed by the court and attached to the order does not indicate in any way that the *Moussaoui* judge adopted its assertions.  *See id.*

In fact, no court has determined that classified material in the possession of someone not cleared to have it is contraband *per se*.  To prove that Petitioners possessed contraband or derivative contraband, therefore, the Government must prove that the Petitioners obtained or used the information unlawfully.[7]  *See One 1958 Plymouth Sedan*, 380 U.S. at 699; *Felici*, 208 F.3d at 670 (stating that derivative contraband is "property that may be lawfully possessed but which became forfeitable because of unlawful use.").  The Government has not shown that the information was classified or otherwise protected when Petitioners initially obtained it,[8] or that Petitioners took or used any information unlawfully or in violation of their Contractor Security Agreements.

In fact, Petitioners contend that their actions were fully lawful.  Petitioner Drake asserts that he "lawfully retained unclassified protected communications information at his residence when he served as a material witness for two 9/11 Congressional investigations" and that he

---

[7] If, for example, the Government proves that Petitioners stole the classified or NSAA information, or somehow used this information unlawfully, the Government may be able to prove that this information constitutes derivative contraband.

[8] The Government conceded at the hearing that it is unaware whether the disputed information was classified or protected when Petitioners obtained the information.

"was a whistleblower under the Intelligence Community Whistleblower Protection Act of 1978 when in contact with Congress and the DoD." Drake Opp'n at 1-2. Petitioner Loomis seemingly posits[9] that he and Petitioner Binney received permission from an intellectual property attorney in the Office of the General Counsel to take some of the disputed information and to use it to form a private business. *See* Loomis Opp'n at 3, 10. As such, a genuine issue of material fact is present. The Government has not established that Petitioners acted unlawfully in obtaining or using any disputed information. Without such proof of unclean hands, the disputed information cannot be labeled as "contraband" or "derivative contraband."

The Government next argues that it is not obligated to return any unprotected information, claiming that if an HDD is classified or NSAA protected, there is no legal requirement forcing the Government to copy unprotected files onto another media for return to Petitioners. *See* Mot. at 18. As noted above, however, seized property other than contraband "should be returned to the rightful owner after the criminal proceedings have terminated." *Duncan*, 918 F.2d at 654; *see Marshall v. Duncan*, No. CA3-84-0503-F, 1984 WL 777, at *2 (N.D. Tex. June 19, 1984) (requiring the IRS to return duplicates of original documents requested by plaintiffs). Here, Petitioners seek return of personal information located on their seized HDDs. The Government has asserted no continuing interest in this unprotected information. Instead, at oral argument, the Government relies on the "undue burden" it would suffer to sift through and return the information. The law contains no "inconvenience exception" to the proposition that seized property should be returned to its lawful owner in the absence of a

---

[9] Courts liberally construe pleadings and briefs from *pro se* litigants "to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 2000). Therefore, although Petitioners did not place these facts in an affidavit, this Court will liberally construe *pro se* Petitioners' submissions as though they used the proper format.

continuing Government interest.  As such, there is no legal basis to grant summary judgment in the Government's favor.

### E.  Petitioners' Other Arguments for Return of Classified Materials Are Unavailing.

#### 1.  The Government Did Not Have to Satisfy the Requirements of CAFRA.

Petitioners also seek return of the property pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, arguing that the Government cannot retain the property because it failed to abide by CAFRA's guidelines.  The Government counters that it has not sought and is not seeking forfeiture of the property, and therefore that CAFRA does not apply.  The Government's position is correct.

CAFRA requires written notice to interested parties in nonjudicial civil forfeiture proceedings.  18 U.S.C. § 983(a)(1)(A).  That notice must be sent within 60 days after the date of the seizure, and if the Government fails to send this notice, the Government must return the property.  *Id.*; 18 U.S.C. § 983 (a)(1)(F).  Petitioners contend that because they received no such notice, the Government cannot retain the seized items.

This argument is flawed, first, because CAFRA does not require the Government to return "property that the person from whom the property was seized may not legally possess." § 983 (a)(1)(f).  As explained above, Petitioners are not entitled to lawful possession of classified information. *See supra* Part III.C.  The Government therefore cannot be forced to return information, which the Government has now established to be classified, pursuant to CAFRA.

Moreover, regarding all of the seized property, the Government is not seeking and has never sought forfeiture.  Instead, the Government seized and held the property as evidence in a criminal investigation.  When the Government seizes property for non-forfeiture purposes, the notice requirements of § 983(a)(1)(A) do not apply.  *See Langbord v. United States Dept. of*

15

*Treasury*, 645 F. Supp. 2d 381, 388 (E.D. Pa. 2009); *Celata v. United States*, No. 07-36088, 2009 WL 1385965 (9th Cir. May 19, 2009); *Chaim v. United States*, 692 F. Supp. 2d 461, 465-66 (D.N.J. 2010); Stefan Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. LEGIS. 97, 129 (2001).  In fact, where the government is not pursuing forfeiture, "the only procedurally proper way to seek return of the property seized . . . would be to file a motion pursuant to Fed. R. Crim. P. 41(g)." *Celata*, 2009 WL 1385965, at *1.  Therefore, because the Government has not sought forfeiture, Petitioners are not entitled to the return of the disputed property under CAFRA.

### 2. The Legality of the Searches Resulting In the Property's Seizure Is Not Relevant.

Petitioners' homes were searched either by consent, in the case of Mr. Loomis, or by search warrant, in the case of the other Petitioners.  Petitioners wish to contest the validity of the warrants, the legality of the searches and seizures, and the voluntariness of the consent.  A determination that the warrants, searches, and consent were unlawful, however, would not affect the outcome of the analysis under Rule 41(g).  Therefore, this Court need not consider the Fourth Amendment issues.

First, even if Petitioners establish a Fourth Amendment violation, Petitioners still would not be entitled to the return of the classified, NSAA, and OGA information because the Government has a continuing interest in retaining this property.  Rule 41(g), as a threshold matter, provides a remedy to petitioners who have been aggrieved by an unlawful search and seizure *or* by a deprivation of property.  Because the Petitioners have already established a deprivation of property, *see supra* Part III.A., establishing an unlawful search or seizure is

16

unnecessary.   The only remaining inquiry under 41(g) is whether the government has a continuing interest in the disputed items.  *See Duncan*, 918 F.2d at 654.  As addressed above, the Government has a continuing interest in the classified, NSAA, and OGA information, and establishing a Fourth Amendment violation would not diminish or vitiate this interest.

Moreover, proving that the Government violated the Fourth Amendment would not alter the appropriate analysis regarding the unprotected information.  Issues of fact still remain as to whether the Petitioners lawfully or unlawfully obtained the classified, NSAA, and OGA information.  *See supra* Part III.D.  If the Government were to establish that Petitioners acted unlawfully, the classified or otherwise protected information might be considered contraband, and the unprotected information might be considered derivative contraband.  *Id.*   The Government is not required to return contraband or derivative contraband even if the initial searches or seizures violated the Fourth Amendment.  *See United States v. One (1) 1971 Harley-Davidson Motorcycle Serial No. 4A25791H1*, 508 F.2d 351, 352 (9th Cir. 1974); *United States v. Eighty-Eight Thousand, Five Hundred Dollars*, 671 F.2d 293, 297 (8th Cir. 1982) (holding that both contraband and derivative contraband are forfeited even if there is an illegal search).   If Petitioners acted lawfully, the information seized is not contraband, and the unprotected information is not derivative contraband.  *See supra* Part III.D.  As such, the Government would be required to return the unprotected information even if the searches and seizures were entirely lawful.   In either scenario, then, establishing that the Government violated the Fourth Amendment would have no bearing on whether Petitioners may obtain return of information.

## IV.    CONCLUSION

For the reasons set forth above, I recommend that summary judgment in favor of the Government be granted in part and denied in part.  The Government has established as a matter

of law that the information it deems to be classified or NSAA information, including all eleven HDDs in question, cannot be returned to Petitioners.   I recommend that the Government's motion for summary judgment be granted in part as to that issue.  However, material facts remain in dispute regarding (1) whether or not the information labeled as "OGA information" is in fact OGA information, and (2) whether the unprotected information contained in the disputed items must be returned in an unclassified format.  Because genuine issues of material fact exist on the current record, I recommend that summary judgment be denied to all movants relating to the OGA information and the unprotected information.

    If this report and recommendation is adopted, and the Government's motion for summary judgment is granted in part, there will be no further litigation regarding return of property the Government labels as classified or NSAA information.  That material will not be returned to Petitioners.  The Government may choose to provide additional evidence to permit the Court to evaluate its assertions as to the OGA information.

    As to the unprotected information, at the hearing on this matter, the Government reiterated its willingness to return such content to the Petitioners.  If the Government adheres to that position and wishes to agree to return the unprotected information in full, there will be no reason for fact discovery or for further motions.  The Government will be providing the Petitioners voluntarily with the maximum recovery Petitioners could hope to achieve by litigating the case.  In that circumstance, I recommend that I hold individual conference calls with the Government and each Petitioner to set firm and appropriate deadlines for the return of the unprotected information.  During those calls, I will explore with each Petitioner whether the Petitioner can provide assistance to the Government to expedite its review and return of the material.

18

If the Government prefers to litigate whether or not the HDDs, disks, and documents constitute derivative contraband, and whether or not any of the material has to be returned, then I recommend that I confer with the parties to set a schedule for limited discovery and for an evidentiary hearing.  The hearing, and the pre-hearing discovery, would be limited to (1) facts necessary to determine whether or not Petitioners engaged in any unlawful conduct or had "unclean hands;" and (2) facts necessary to determine the relationship between any unlawful conduct/unclean hands and Petitioners' use of the disputed items.  Following that evidentiary hearing, I would prepare another report and recommendation outlining findings of fact regarding whether or not Petitioners engaged in any wrongdoing, and recommending whether or not the unprotected material has to be returned to Petitioners.

For the reasons stated herein, I recommend that Petitioners' Motions for Summary Judgment, [ECF Nos. 49, 53], be DENIED, and I further recommend that the Government's Motion for Summary Judgment, [ECF No. 46], be GRANTED in part and DENIED in part.  I direct the Clerk to mail a copy of this Report and Recommendation to Petitioners at the addresses listed on the docket.  Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated:  September 14, 2012                                    /s/

Stephanie A. Gallagher
United States Magistrate Judge

19